STATE OF NEBRASKA, APPELLEE, V. DENNIS J. GARDNER, APPELLANT.

498 N.W.2d 605

Filed January 26, 1993.   No. A-91-619.

Thomas M. Kenney, Douglas County Public Defender, and Cheryl M. Kessell for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

Sɪᴇᴠᴇʀs, Chief Judge, and Cᴏɴɴᴏʟʟʏ and Wʀɪɢʜᴛ, Judges.

Cᴏɴɴᴏʟʟʏ, Judge.

## I. INTRODUCTION

This appeal arises from the conviction of appellant, Dennis J. Gardner, for first degree sexual assault on a child. While Gardner admitted there was evidence that the victim had been molested, he sought to persuade the jury that the victim's father, rather than Gardner, was the perpetrator. In support of this contention, Gardner wanted to introduce testimony concerning a prior bad act by the victim's father. Gardner also wanted to introduce testimony from two of his nieces that on the occasions on which they had stayed with Gardner, he never molested them.

The State filed a motion in limine to exclude the testimony concerning the prior bad act and the testimony of the two nieces. The motion was sustained. Gardner assigns as error the trial court's refusal to admit either type of testimony. Gardner also argues that his sentence is excessive. We affirm.

## II. FACTS

The victim, Monica W., born December 24, 1981, is the daughter of Sherri W. and Gene S. Monica lives with her mother and two younger brothers. While she was in the second grade, during the 1989-90 school year, Monica occasionally spent the night with her father, who does not live with Monica and her mother. Sometimes Monica stayed with her maternal grandmother. Almost every weekend during the 1989-90 school year, Monica stayed overnight with Gardner and his girl friend, Chris "Tracy" Wilsey, who were friends of Monica's mother.

In June or July 1990, Monica told her mother that Gardner "was doing things that she wasn't sure was [sic] right." From then on, Monica's mother no longer allowed Monica to stay overnight with Gardner and his girl friend, but she did not make a report to the police.

During a school-sponsored workshop on prevention of sexual abuse held in September 1990, Monica became upset after a video presentation that dealt with improper touching between adults and children. Monica told the instructor of the workshop that she had been molested by Gardner. The police

commenced an investigation. Monica was placed in foster care after she told police that her mother had ignored several reports by Monica that she had been sexually abused. Gardner was arrested October 13, 1990.

Upon physical examination of Monica, Dr. Mark D. Horton of the pediatrics department of the Creighton University Medical Center found abnormalities for a girl Monica's age in her hymen. According to Dr. Horton, the opening of the hymen into the vagina was unusually large, the hymen itself was worn down to an unusually small amount of tissue, and there was scar tissue in the posterior part of the hymen. Dr. Horton concluded that the best explanation for the abnormal condition of the hymen was repeated penetration of the hymenal orifice by a blunt object, very likely an adult finger, as Monica had described to Dr. Horton during the examination.

In chambers before trial, the State submitted a motion in limine asking the court to prevent Gardner from introducing testimony of Glen Gladden concerning an incident involving Monica's father, who is Gladden's cousin. Monica's father was not a witness in the case. Gladden would have testified that 10 or 12 years before the trial in this case, he was present when Monica's father, then 15 or 16 years of age, french kissed Gladden's 3-year-old sister. Gardner admitted there was evidence that Monica had been molested; he wanted to introduce Gladden's testimony to convince the jury that Monica's father was the perpetrator.

The State's motion also sought to block testimony by Nina and Kesha Montoval, Gardner's 14- and 12-year-old nieces, who would have testified that Gardner had never molested them on the occasions on which they stayed overnight with him. The trial court granted the State's motion in full, excluding the proposed testimony of Gladden and the two nieces.

At trial, Monica testified that, on more than one occasion, Gardner had french kissed her; touched her chest and the area between her legs; put his finger in her "private"; and put his "private" into her "private," which resulted at least once in Monica getting "slime" on her "private" from Gardner's penis.

Gardner denied all allegations of inappropriate sexual contact between himself and Monica. Gardner insisted that

there had never been any type of physical contact, not even playful or casual, between himself and Monica.

Gardner was convicted of first degree sexual assault on a child and sentenced to a prison term of 5 to 10 years.

## III. ASSIGNMENTS OF ERROR

Gardner assigns as error the trial court's exclusion of the testimony of Gladden and the exclusion of the testimony of Gardner's nieces. Gardner also argues that the sentence imposed by the trial court was excessive.

## IV. STANDARD OF REVIEW

Admissibility of evidence of other wrongs or acts is a matter within the discretion of the trial court, and the trial court's decision will be upheld absent abuse of discretion. *State v. Christian*, 237 Neb. 294, 465 N.W.2d 756 (1991).

Because exercise of judicial discretion is implicit in Neb. Rev. Stat. § 27-401 (Reissue 1989), relevancy of evidence is a matter within the discretion of the trial court, and the trial court's decision will be upheld absent abuse of discretion. *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991).

A sentence imposed by the trial court that is within the statutory limits will not be disturbed on appeal absent abuse of discretion. *State v. Miller*, 240 Neb. 297, 481 N.W.2d 580 (1992).

"Judicial abuse of discretion" means that the reasons or rulings of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Thomas*, 238 Neb. 4, 468 N.W.2d 607 (1991); *State v. Armstrong, ante* p. 21, 485 N.W.2d 341 (1992).

## V. DISCUSSION

### 1. PRESERVATION OF ERROR

First, we consider the State's argument that Gardner failed to preserve error based on the granting of the State's motion in limine because he did not challenge the ruling at trial.

In order to preserve error, the party opposing a motion in limine which was granted must make an offer of proof outside the presence of the jury. *McCune v. Neitzel*, 235 Neb. 754, 457

N.W.2d 803 (1990). When error is predicated on exclusion of evidence, the substance of the evidence must have been made known to the judge by offer outside the hearing of the jury. Neb. Rev. Stat. § 27-103 (Reissue 1989).

On the morning of the trial, but before the trial began, the trial judge heard argument in chambers regarding the State's motion in limine to exclude the testimony of Gladden and the two nieces. In chambers, Gardner opposed the State's motion in limine by offering the substance of the evidence at issue and arguing for its relevancy. The judge sustained the motion with regard to the testimony of the two nieces and reserved ruling on Gladden's testimony "until we start the evidence." Later in the day, during the State's case, the judge informed Gardner that "[b]oth paragraphs" of the State's motion in limine would be sustained, which meant that Gladden, as well as the nieces, would be barred from testifying.

Although Gardner informed the judge in detail of the substance of the proposed evidence, and did so outside the hearing of the jury, the State argues that Gardner had to re-offer in the afternoon, during trial, the same argument opposing the motion that he had offered in chambers that morning. The question, then, is whether Gardner preserved error even though he did not make a formal offer of proof during trial.

While there is no Nebraska case law directly addressing this variation on § 27-103, the U.S. Court of Appeals for the Fifth Circuit has addressed the same question regarding Fed. R. Evid. 103, which is identical to § 27-103.

In *McQuaig v. McCoy*, 806 F.2d 1298 (5th Cir. 1987), the court found that the requirements of Fed. R. Evid. 103 were satisfied by a party who, while arguing unsuccessfully in a pretrial conference for admission of evidence, articulated the purposes for which the evidence was to be offered. Though the party did not contest the pretrial ruling in the course of the trial, the court held that "where the party has gone into such detail . . . as to the substance of the evidence and why it should be admitted . . . the issue has been properly preserved for appeal." *McQuaig*, 806 F.2d at 1301-02.

In *Garner v. Santoro*, 865 F.2d 629 (5th Cir. 1989), the court

held that to preserve error a party need not make a specific offer of evidence at trial when the evidence has already been ruled inadmissible during pretrial argument. " '[T]he court's ruling relates forward to all possible offers of such evidence and renders them needless.' " *Id.* at 636 (quoting 1 John H. Wigmore, Evidence in Trials at Common Law § 17 (Peter Tillers rev. 1983)).

In the case at bar, during the pretrial argument over the State's motion in limine, the trial judge was fully informed of the substance of the proposed evidence and of Gardner's justification for admissibility. The judge indicated that he understood, but disagreed with, Gardner's arguments for the admissibility of the evidence at issue. There was no purpose or need for Gardner to raise the issue again at trial. The record already contained the evidentiary colloquy on which Gardner would base his assignment of error concerning exclusion of the testimony of Gladden and the two nieces.

The State cites *Frerichs v. Nebraska Harvestore Sys.*, 226 Neb. 220, 410 N.W.2d 487 (1987), for the proposition that this court should not even consider Gardner's assignments of error based on the motion in limine. Unlike Gardner, the complaining party in *Frerichs* never made an offer of proof, either before or during trial, concerning the evidence excluded by the motion in limine. In the *Frerichs* record, there was no argument by the complaining party on which an assignment of error concerning the excluded evidence could have been based. In the case at bar, the record contains several pages of argument concerning the evidence excluded by the motion in limine.

As the State points out, a motion in limine is not to be used to obtain a final ruling on the admissibility of evidence. *Frerichs, supra.* In the case at bar, Gardner was not using a motion in limine to obtain a final evidentiary ruling. The State submitted the motion. Gardner was forced at the pretrial conference to begin offering the substance of his evidence to prevent its exclusion from the trial. The timing of the evidentiary colloquy—pretrial instead of during trial—was irrelevant.

We find that Gardner's pretrial argument in favor of the excluded testimony constituted sufficient notice of the substance of the evidence sought to be offered to preserve error

on appeal. See *McQuaig, supra* (complaining party satisfied federal rule 103 by articulating in pretrial hearing the purposes for which the evidence was to be offered). The trial court was fully informed of Gardner's purposes and expectations for the testimony. This court, too, is fully informed and therefore capable of reviewing the alleged error, because Gardner's opposition to the motion is preserved in the record. See *McQuaig, supra* (appellate court could review pretrial offer of proof because it was preserved in the record). Therefore, Gardner's assignments of error predicated on the granting of the motion in limine are properly before this court.

## 2. Testimony of Gladden

Neb. Rev. Stat. § 27-404(2) (Reissue 1989) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Gardner wanted Gladden to testify that as a teenager, Monica's father had french kissed a 3-year-old cousin. The trial judge concluded the argument regarding Gladden's proposed testimony by stating, "I don't think you can bring in specific acts dealing with other individuals to show a propensity [of Monica's father] to do the particular act in this case." At that time, the judge reserved ruling on the matter. Later that day, during trial, the judge ruled against Gardner and barred testimony by Gladden about the kissing incident.

We are presented with two questions: (1) whether § 27-404(2) allows the accused to offer evidence of the prior bad acts of a third party and (2) whether Gladden's testimony was offered merely to show propensity of a third party to commit the crime charged.

We find no Nebraska cases directly addressing the question of whether, pursuant to § 27-404(2), an accused may introduce prior crimes, wrongs, or acts of a third party. However, in *U.S. v. McCourt*, 925 F.2d 1229 (9th Cir. 1991), the U.S. Court of Appeals for the Ninth Circuit found that federal rule 404(b)

does permit the accused to introduce prior crimes, wrongs, or acts of a third party. Federal rule 404(b) is identical to § 27-404(2).

*McCourt* set out the relevant language of federal rule 404(b), with emphasis included: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of *a person* in order to show action in conformity therewith." *McCourt*, 925 F.2d at 1231. The court ruled that "on its face, Rule 404(b) applies to 'a person' and is not limited to the defendant." *Id*. *McCourt* went on to cite leading commentators on the law of evidence, who definitively state that a defendant may introduce evidence of a third party's prior crimes, wrongs, or acts.

The commentators cited in *McCourt* also point out that regardless of who offers evidence against whom, the offering party remains bound by the requirement that the evidence not be offered to prove conformity with character. Therefore, while we adopt the premise that, pursuant to § 27-404(2), an accused may offer evidence of prior crimes, wrongs, or acts of a third party, we also note that the accused is nonetheless bound by the requirement, well established in Nebraska law, that the evidence be offered for a purpose other than proving the propensity of the person to commit the crime charged. *State v. Christian*, 237 Neb. 294, 465 N.W.2d 756 (1991).

Under federal rule 404(b) and § 27-404(2), permissible purposes for offering prior bad acts include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. *McCourt* discusses several cases in which the government was allowed to introduce acts of a third party in order to prove the defendant's involvement in a conspiracy, plan, or scheme. "In each of these cases, the government offered the bad acts evidence respecting a third party to show a relevant, consequential fact other than propensity . . . ." (Emphasis omitted.) *McCourt*, 925 F.2d at 1233.

Gardner's purpose for introducing the prior bad act of Monica's father did not fit into any of the permissible categories under § 27-404(2). Gardner sought to prove conformity with character. His purpose was to suggest that Monica's father had molested a child once before and that he likely did it again.

Section 27-404(2) prohibits precisely that type of proof.

Admissibility of evidence of other wrongs or acts is a matter within the discretion of the trial court, and the trial court's decision will be upheld absent abuse of discretion. *State v. Christian, supra.* The trial court did not abuse its discretion by excluding Gladden's testimony, and we find no error.

### 3. TESTIMONY OF GARDNER'S NIECES

Gardner's offer of the testimony of the two nieces was premised on Neb. Rev. Stat. § 27-405(2) (Reissue 1989), which allows proof of a character trait if the trait is an essential element of the charge, claim, or defense. We do not address Gardner's argument regarding proof of character trait because the testimony of the two nieces would have been irrelevant.

During pretrial argument, the trial judge said to Gardner's counsel, "[Y]ou intend to call [Gardner's] two nieces to show that your client did not molest them[;] I don't see where that's relevant to this particular action." Gardner's counsel asserted that, normally, a child molester molests more than one child; therefore, Gardner wanted to convince the jury that he was not a habitual child molester, and he wanted to do so by proving that he did not molest his nieces, even though there had been opportunities to do so. Without further discussion, the trial judge sustained the part of the motion in limine excluding the proposed testimony of the two nieces.

Evidence is relevant if it tends to make more or less probable a fact of consequence. § 27-401. The fact that Gardner never molested his two nieces does not make it more or less probable that he molested other children, nor does it make more or less probable the charge that he molested Monica. If, for example, Gardner had been charged with robbery, he would not have been allowed to bring in two owners of stores frequented by Gardner to testify that he had never robbed them. The suggestion that a defendant charged with sexual assault on a child should be allowed, as a means of proving that he did not molest the victim, to introduce the testimony of two other children that he never molested them, stretches the concept of relevancy beyond the limits of reasonableness.

Because exercise of judicial discretion is implicit in § 27-401,

relevancy of evidence is a matter within the discretion of the trial court, and the trial court's decision will be upheld absent abuse of discretion. *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991). For the reasons set out above, we find no abuse of discretion, and thus no error, in the decision to exclude the testimony of the two nieces.

## 4. EXCESSIVE SENTENCE

Gardner argues that the sentence imposed by the trial court is excessive. When determining a sentence, a judge should consider the nature and seriousness of the offense. *State v. Smith*, 240 Neb. 97, 480 N.W.2d 705 (1992); *State v. Wounded Arrow*, 240 Neb. 44, 480 N.W.2d 205 (1992). Identifying sexual assault on a child as "one of the more serious charges . . . that we hear," the trial judge determined that probation would not be an appropriate remedy because a sentence of probation "depreciates the seriousness of the offense." The effect of the crime on the victim underscores the seriousness of the offense. We note that Monica has been seeing a certified professional counselor on a weekly basis since October 1990.

Observing for the record that the adult probation office recommended incarceration, the trial court sentenced Gardner to 5 to 10 years in prison.

First degree sexual assault is a Class II felony, Neb. Rev. Stat. § 28-319(2) (Reissue 1989), punishable by a prison sentence of a minimum of 1 year and a maximum of 50 years, Neb. Rev. Stat. § 28-105(1) (Reissue 1989). A sentence imposed by the trial court that is within the statutory limits will not be disturbed on appeal absent abuse of discretion. *State v. Miller*, 240 Neb. 297, 481 N.W.2d 580 (1992). Unless the trial court's reasoning is clearly untenable, an appellate court will not disturb a sentence. *State v. Thomas*, 238 Neb. 4, 468 N.W.2d 607 (1991); *State v. Armstrong, ante* p. 21, 485 N.W.2d 341 (1992).

Gardner received a sentence well within the range permitted by statute. The trial court's reasons for sentencing Gardner to a prison term were not clearly untenable. We find no abuse of discretion, and thus no error, in the sentencing of Gardner.

AFFIRMED.